# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ERIC C., | ) |
| | ) |
|       **Plaintiff** | ) |
| | ) |
| v. | )    No. 2:22-cv-00296-LEW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
|       **Defendant** | ) |

## REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability and Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) erred in discounting a post-hearing affidavit of vocational expert David W. Meuse, M.S., C.R.C., failing to find a closed period of disability, and using vocational terminology to assess his mental residual functional capacity. *See* Plaintiff's Brief (ECF No. 13) at 3-13. I discern no error and, accordingly, recommend that the Court affirm the Commissioner's decision.

### I. Background

The ALJ found, in relevant part, that, the Plaintiff (1) had the severe impairments of status-post cervical spine fusion, major depressive disorder, and anxiety disorder, *see* Record at 14; (2) retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that, in an eight-hour workday, he could occasionally reach overhead bilaterally,

1

perform tasks that could be learned in thirty days or less carrying out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations and a normal work schedule, *see id.* at 16; (3) could perform jobs existing in significant numbers in the national economy, *see id.* at 24; and (4) therefore had not been disabled from July 15, 2011, his alleged onset date of disability, through the date of the decision, September 15, 2021, *see id.* at 26. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III.  Discussion

### A.  Rejection of Rebuttal Vocational Evidence

Richard Oestreich, Ph.D., the vocational expert (VE) present at the Plaintiff's hearing, testified that a person with the RFC ultimately assessed by the ALJ could perform the jobs of Garment Sorter, with 110,000 jobs in the national economy, Packager, with about 95,000 jobs in the national economy, and Assembler, with about 125,000 jobs in the national economy.  *See* Record at 92; U.S. Dep't of Lab., *Dictionary of Occupational Titles* (*DOT*) §§ 222.687-014, 1991 WL 672131; 559.687-074, 1991 WL 683797; 706.684-022, 1991 WL 679050 (4th ed., rev. 1991).

The ALJ inquired how the VE arrived at his numbers, and he responded that he used the "basic Bureau of Labor Statistics numbers," had "extensive experience and education in [his] PhD work in statistics," and had "spent a lot of time with the Bureau of Labor Statistics."  Record at 92-93.  The Plaintiff's attorney then asked the VE to describe the professional experience on which he relied.  *See id*. at 93.  The VE testified that he was "the head cabinet-level position running the vocational rehabilitation" and disability determination bureaus in Ohio, had "done job analysis in at least four states," and had "over 50 years of experience."  *Id*. at 93-94.  He added, "I don't know anybody who's better at that than I am, but you may know somebody."  *Id*. at 94.

Post-hearing, the Plaintiff's counsel submitted an affidavit in which VE Meuse stated that the O*Net, published by the Department of Labor (DOL), Bureau of Labor Statistics (BLS), "has replaced the DOT as the source of reliable job information used

3

by DOL." *Id.* at 374. He noted that the O*Net places the three jobs on which VE Oestreich relied "in the semi-skilled range or higher, showing these are no longer unskilled jobs as described in 1977, 1979 and published in the DOT in 1991." *Id.* at 375. Based on his experience, he agreed with the O*Net classification. *Id.*

Treating VE Meuse's points as objections to VE Oestreich's testimony, the ALJ overruled them, explaining:

> [VE Oestreich] has professional knowledge and experience in both job placement and determining the availability of jobs in the national economy. He testified to his methodology based on more than 30 years of relevant experience, and specifically confirmed that the job requirements and numbers to which he testified were consistent with his personal observations, training, and knowledge of industry standards. No pertinent cross-examination of [VE Oestreich's] testimony was posed at the hearing to impeach it, nor did other features of the record call that testimony into question. In addition, the [Plaintiff's] counsel has not shown that [VE Oestreich's] testimony would fail to clear the substantial-evidence bar.
>
> Furthermore, the regulations have established that providing evidence of significant national job numbers is sufficient to prove the availability of other work (20 CFR 404.1566 and 416.966). . . .
>
> I have carefully weighed and considered [VE Oestreich's] testimony along with all other evidence in this case . . . . The undersigned allowed counsel to fully question the VE at the hearing. The VE cited the sources he relied upon in determining job numbers in this case. The agency has taken administrative notice of said sources under the regulations. Therefore, I have determined that [VE Oestreich's] testimony, including the job numbers cited, is reliable . . . .

*Id.* at 25.

The Plaintiff faults the ALJ for overruling the points made in VE Meuse's affidavit without addressing them, asserting that the ALJ "implicitly held that the agency can rely on the job descriptions at least 37 years old in the 1991 DOT as

4

representing how the jobs are performed today." Plaintiff's Brief at 5. He adds that the ALJ erroneously rejected the "uncontradicted" testimony of VE Meuse that the O*Net provides more updated information than the *DOT*, and, per the O*Net, the jobs VE Oestreich identified are all now skilled. *Id.* at 9.

Yet, the Meuse affidavit was contradicted by the testimony of VE Oestreich, and the ALJ duly resolved that conflict. She was not required to adopt the testimony predicated on the newer O*Net; indeed, she correctly noted that the Commissioner continues to take administrative notice of the *DOT*. *See* Record at 25; 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). Nor was she required to enumerate ways in which the Meuse affidavit was deficient. Her explanation that she found the testimony of VE Oestreich reliable sufficed. *See, e.g., Olivia M. v. Kijakazi*, No. 2:20-cv-00441-GZS, 2021 WL 4893599, at *4 (D. Me. Oct. 20, 2021) (rec. dec.) (holding that an ALJ who "acknowledged Mr. Meuse's challenge" to the testimony of the VE at hearing "and then explained why she found" the VE's hearing testimony "reliable" was "not required to do more"), *aff'd*, 2021 WL 5182661 (D. Me. Nov. 8, 2021); *Brett J. v. Saul*, No. 1:19-cv-00270-DBH, 2020 WL 3567155, at *4-5 (D. Me. June 30, 2020) (rec. dec.) (holding that an ALJ did not err in rejecting VE Meuse's opinion that "the jobs at issue had changed over time and were performed at a semiskilled rather than unskilled level" on the basis that the ALJ found the contrary testimony of the VE at hearing more compelling).

At oral argument, the Plaintiff's counsel cited two cases for the proposition that remand is warranted based on the ALJ's handling of the Meuse affidavit: *Amanda I.*

5

*v. Kijakazi*, No. 1:22-cv-00183-JAW, 2023 WL 1860174 (D. Me. Feb. 9, 2023) (rec. dec.), *aff'd*, ECF No. 23 (D. Me. Apr. 19, 2023), and *Gwendolyn L. v. Berryhill*, No. 1:18-cv-00272-JDL, 2019 WL 2435673 (D. Me. June 11, 2019), *aff'd*, 2019 WL 4196058 (D. Me. Sept. 4, 2019). *See* Plaintiff's Brief at 10; Plaintiff's Reply Brief (ECF No. 20) at 7. Both are distinguishable.

In *Amanda I.*, the Court held remand warranted when the VE at hearing and VE Meuse provided clashing opinions on job numbers using nearly identical versions of Job Browser Pro, and VE Meuse's numbers, if accepted, would require remand. *Amanda I.*, 2023 WL 1860174, at *5-6. The Court reasoned, "Without further development of the record, a decision-maker cannot supportably conclude that one version is more current and accurate than the other." *Id*. at *6. In this case, by contrast, the two VEs arrived at different conclusions based on their differing sources and professional experiences.

In *Gwendolyn L.*, the Court held remand warranted because the bases on which the ALJ rejected the Meuse affidavit were unsupported by substantial evidence of record. *Gwendolyn L.*, 2019 WL 2435673, at *4. The Plaintiff has not argued, nor do I find, that the ALJ mischaracterized the record in explaining why she rejected the Meuse affidavit in this case.[1]

---

[1] The Plaintiff also asserts that "[m]ultiple courts have remanded cases for the ALJ to consider updated job descriptions in the O*Net, where[,] as here, the obsolescence of the particular DOT job descriptions in question would render the ALJ's Step 5 finding unsupported by substantial evidence." Plaintiff's Brief at 8. However, he cites no such cases from this Court or the First Circuit. *See id*.

### B. Rejection of Opinion of Agency Examining Consultant

The Plaintiff next faults the ALJ for rejecting a December 11, 2019, opinion of agency examining consultant Ira W. Stockwell, D.O., that he argues should have led, at a minimum, to a finding of a closed period of disability for a year after he underwent a cervical revision surgery in September 2018. *See* Plaintiff's Brief at 10-12; Record at 829-33. I find no error.

Dr. Stockwell noted that the Plaintiff had undergone a cervical surgery in 2012 that failed, following which he had a revision surgery in 2018 for right-sided cervical radiculopathy with "good results." Record at 829. However, the Plaintiff was "left with a chronic left cervical radiculopathy," causing "major persistent problems that he has 24-7 associated with neck pain, shoulder pain, intolerance to repetitive activities, and intolerance to static positioning, looking at computers, et cetera." *Id.*

On examination, Dr. Stockwell found that the Plaintiff's range of motion of his cervical spine in flexion and extension was "limited by paresthesias in the left arm exacerbated by extension, indicative of a left cervical radiculopathy." *Id.* at 831. He described the Plaintiff's "range of motion of the upper extremities" as "normal but painful" and noted that the Plaintiff could "raise his arms overhead without any major difficulty," although that "aggravate[d] his shoulders and his neck with pain." *Id.*

Dr. Stockwell provided the following Medical Source Statement:

> This patient indeed has physical problems associated with a failed surgery with a cervical radiculopathic syndrome with possible reflex sympathetic dystrophy of the right side with weakness, chronic pain, and dysesthesias. In addition, he has psychiatric issues of severe

7

> depression that appear to be progressive. Because of the nature of his work with computers, using the computer screen, et cetera, he has the inability to do that because of the cervical issues and appears not able to do that work. Sedentary work is probably not an option because that is going to involve the use of computers, et cetera. When you add the severe depression, he does not appear able to function in that capacity even at a sedentary situation unless his problems somehow resolve with future therapy.

*Id.* at 833.

With the benefit of review of the Stockwell report, agency nonexamining consultant Robert Hayes, D.O., deemed the Plaintiff able to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for more than six hours in an eight-hour workday; sit for more than six hours in an eight-hour workday; occasionally crawl; and occasionally reach overhead but never while climbing. *See id.* at 120-21. He added that the Plaintiff needed to avoid even moderate exposure to vibration and concentrated exposure to hazards (machinery, heights, etc.). *Id.* at 121.

Dr. Hayes noted that the Plaintiff had undergone a second surgery primarily for right-side symptoms "with an improvement in these, but with no change in [l]eft side symptoms." *Id.* at 122. He commented that "Dr. Stockwell's statement about the physical requirements of computer work make sense, but the limits do not automatically preclude other activities as he suggests." *Id.* at 120. Asked whether "this opinion was more restrictive than the findings," Dr. Hayes responded, "No." *Id.*

The ALJ rejected Dr. Stockwell's opinion that sedentary work was "probably not an option" for the Plaintiff "because of the possible work involving computers" and that the Plaintiff's physical limitations, combined with his depression, would render him unable to "function even at a 'sedentary situation.'" *Id.* at 20-21. She

8

deemed that opinion "unpersuasive as it was based on a one-session evaluation" and inconsistent with the record as a whole, including Dr. Stockwell's own findings on examination; "post operative progress notes showing [that the Plaintiff's] right radicular symptoms had abated"; and the Plaintiff's reported range of activities of daily living, which included "walking his dog and attending to household chores." *Id.* at 21.  She found the Hayes RFC assessment persuasive because it was "consistent with" findings on physical examination, "imaging studies, the [Plaintiff's] treatment history, and [his] activities of daily living." *Id.*

The Plaintiff complains that the ALJ "went to great pains . . . to attempt to minimize the findings from [the Plaintiff's] chronic neck pain with left arm radicular symptoms, particularly in stating that there was a '"lack of objective evidence' following the 2011 surgery." Plaintiff's Brief at 11 (quoting Record at 17).  Yet, the ALJ's finding was more nuanced.  She explained that she found "an overall lack of objective evidence following the [Plaintiff's 2011] surgery *to support a more restrictive limitation than work at the light exertional level.*"  Record at 17 (emphasis added).

The Plaintiff adds that the ALJ had no reasonable basis for rejecting the Stockwell report because Dr. Hayes (1) found Dr. Stockwell's conclusion that the Plaintiff "could not do even sedentary computer work . . . reasonable," (2) described the Stockwell opinion as no more restrictive than his own although it was facially inconsistent, and (3) made no allowance for the impact of the Plaintiff's conditions on the use of his left arm.  Plaintiff's Brief at 11-12.  I am unpersuaded.

9

Absent a material error in an ALJ's resolution of conflicts in the evidence, including the expert opinion evidence of record, this Court defers to an ALJ's weighing of the evidence, which is the core duty of an ALJ. *See, e.g., Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) ("The [Commissioner] may (and, under [her] regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.").

In pressing this argument, the Plaintiff fails to come to grips with the ALJ's global finding that the Stockwell opinion was inconsistent with the record as a whole, including the Plaintiff's daily activities and treatment history. *See* Record at 21. He also fails to identify any material error in the ALJ's assessment of the evidence. Dr. Hayes's agreement with Dr. Stockwell's computer restriction was narrow: he explained that, while "Dr. Stockwell's statement about the physical requirements of computer work make sense, . . . the limits do not automatically preclude other activities as he suggests." *Id.* at 131. Dr. Hayes did include restrictions on the use of the Plaintiff's left arm, explaining that his assessed exertional limitations took into account "chronic pain and paresthesias of Left UE [upper extremity]" and assessing postural and manipulative limitations to only occasional overhead reaching with both arms and no overhead reaching while climbing. *Id.* at 131-32. Finally, Dr. Hayes seemingly was asked whether Dr. Stockwell's opinion was more restrictive than Dr. Stockwell's own findings, not those of Dr. Hayes. *See id.* at 120. Even if Dr. Hayes erroneously indicated that the Stockwell opinion was not more restrictive than his

own, the Plaintiff does not explain, nor is it apparent, why anything turns on that error.

At bottom, the ALJ's RFC finding is supported by substantial evidence in the form of the Hayes RFC assessment.

### C. Use of Vocational Terminology To Define Mental RFC

The Plaintiff finally contends that the ALJ erred in using vocational terminology to assess his mental RFC—specifically, in finding him capable of performing "tasks that can be learned in 30 days or less," which is the definition of Specific Vocational Preparation (SVP) Level 2 jobs. Plaintiff's Brief at 12-13. For that proposition she cites both an Appeals Council decision from another case (which she failed to append to her brief) and Social Security Ruling (SSR) 96-8p. *See id.* at 13. I am unpersuaded.

SSR 96-8p provides, in relevant part, that a claimant's nonexertional capacity "must be expressed in terms of work-related functions," explaining that "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

However, the ruling does not require that a claimant's RFC be assessed using this or any other specific terminology, *see id.*, and this Court has held otherwise, *see, e.g.*, *Allison P. v. Berryhill*, No. 2:18-cv-00061-JHR, 2019 WL 1373646, at *4-5 (D. Me.

11

Mar. 24, 2019) (holding that an ALJ's finding that a claimant retained the "ability to carry out detailed but uninvolved instructions"—the definition of General Educational Development (GED) Reasoning Level 2—was consistent with an expert's opinion that the claimant retained the ability to perform "'simple' work" and that the ALJ did not err in clarifying to the VE at hearing that "she intended to limit her hypothetical question to jobs with an SVP level of 2").

## IV.  Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be ***AFFIRMED***.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: December 12, 2023

<u>/s/ Karen Frink Wolf</u>
United States Magistrate Judge